Allen Ray CRAIG, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–89–869.

Court of Criminal Appeals of Oklahoma.

Oct. 9, 1991.

Joe P. Robertson, Wagoner, for appellant.

Robert H. Henry, Atty. Gen., Alecia A. George, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

Allen Ray Craig, appellant was tried by jury and convicted of Operating a Motor Vehicle Under the Influence of Alcohol or Other Intoxicating Substance and Being Involved in a Personal Injury Accident (47 O.S.Supp.1985, § 11–904) in Wagoner County District Court Case No. CRF–88–157. In accordance with the jury's recommendation, appellant was sentenced to six (6) months incarceration in the county jail and fined $2,500.00. From this Judgment and Sentence, appellant appeals.

On July 13, 1988, appellant was involved in a two-car accident in Wagoner County. The car which appellant was driving struck an automobile driven by Steven Gene Howard and both persons sustained injuries. Appellant and Howard were transported to a Tulsa hospital.

After investigating the scene of the accident, Broken Arrow Police Officer Richard Barnett went to the hospital to check on the condition of appellant and Howard. Officer Barnett testified that while he was checking on appellant's condition, he noticed an odor of alcohol about appellant's breath. Barnett then arrested appellant and read him an "implied consent" card. Appellant gave his consent to the withdrawal of blood for the purpose of testing and signed his name to the implied consent card. At the officer's request and in his presence, Registered Nurse Sue Yoder withdrew two vials of blood from appellant. Subsequent chemical analysis revealed that appellant's blood contained a small amount of phencyclidine (PCP) and an ethyl alcohol level of .09 percent.

On appeal, appellant launches a multi-proposition attack upon the admission of the results of the blood analysis. Appellant first contends that Sue Yoder was not qualified to withdraw his blood. Specifically, he asserts that Yoder was not certified by the Board of Medical Licensure and

Supervision, that she did not hold a valid permit issued by the Board of Tests for Alcohol and Drug Influence, and that she did not know or comply with the rules promulgated by either board.

Title 47 O.S.Supp.1987, § 752(1), provides:

Only a licensed medical doctor, licensed osteopathic physician, registered nurse, licensed practical nurse, physician's assistant, certified by the State Board of Medical Licensure and Supervision, an employee of a hospital or other health care facility authorized by the hospital or health care facility to withdraw blood, or other qualified person authorized by the Board of Tests for Alcohol and Blood Influence acting at the request of a law enforcement officer may withdraw blood for purpose of having a determination made of its concentration of alcohol or other intoxicating substance.

■ We first find that Section 752 does not mandate that nurses be certified by the State Board of Medical Licensure and Supervision in order to withdraw blood for the purpose of alcohol testing. Initially, it should be noted that medical doctors and osteopathic physicians are "licensed" by the State Board of Medical Licensure and Supervision, *see* 59 O.S.Supp.1987, § 493 et seq., while nurses are either "registered" or "licensed" by the State Board of Nurse Registration and Nursing Education, *see* 59 O.S.1981, §§ 567.5(c) and 567.6(e), respectively. Only physician's assistants are "certified" by the State Board of Medical Licensure and Supervision. *See* 59 O.S.1981, § 519 et seq.

■ Next, we dismiss appellant's contention that Nurse Yoder was not qualified to withdraw his blood because she did not possess a valid permit issued by the Board of Tests for Alcohol and Drug Influence. The Rules and Regulations of the Board of Tests for Alcohol and Drug Influence clearly provide that the current and valid registration of a registered nurse "is deemed by the Board ... to be a valid Permit to Withdraw Blood under the provisions of Title 47...." *Rules and Regulations of the Oklahoma State Board of Tests for Alco-*

*hol and Drug Influence,* R & R No. 84–21(1) (March 15, 1984). As Ms. Yoder testified that she did indeed possess a valid license to practice as a registered nurse, this argument is meritless.

▮▮▮▮ With respect to his final sub-allegation, appellant cites no facts or authority to demonstrate that Nurse Yoder did not know or comply with the rules for withdrawing blood for the purpose of alcohol/intoxicant testing. Absent fundamental error, this Court will not address assignments unsupported by relevant citations of authority. *Hiler v. State,* 796 P.2d 346, 349 (Okl.Cr.1990). The record reveals that both Officer Barnett and Nurse Yoder testified in detail as to the procedures used to withdraw and preserve appellant's blood. Officer Barnett further stated that such procedures were proper. On the basis of this evidence, we find that State clearly demonstrated compliance with applicable procedures. *See Raley v. State,* 479 P.2d 609, 611–12 (Okl.Cr.1971). Accordingly, we find no fundamental error and appellant's first proposition is dismissed.

At trial, appellant testified that he was unconscious or semiconscious for four (4) days after the accident and that he did not remember giving his consent to a blood test. Appellant further stated that he did not learn his blood had been withdrawn until he was arraigned approximately four (4) months later. As his second proposition of error, appellant contends that Officer Barnett should have advised him of his right to revoke his consent to the blood test, and that such failure rendered the blood test results inadmissible.

▮▮▮▮ This Court has held that when blood is taken from an unconscious person for the purpose of intoxicant testing, such person must be given the opportunity to revoke his implied consent to the blood test once he regains consciousness. *Holt v. State,* 686 P.2d 290, 291 (Okl.Cr.1984); *State v. Wood,* 576 P.2d 1181 (Okl.Cr.1978). In the present case, however, both the arresting officer and Nurse Yoder testified that appellant appeared to be awake, knew what he was doing and understood what was happening when he signed the consent form. *See Isom v. State,* 646 P.2d 1288, 1291 (Okl.Cr.1982). "The question of suppressing evidence is a judicial question and this Court will not reverse the trial court upon a question of fact where there is a conflict of evidence, and there is competent evidence reasonably tending to support the judge's findings." *Id.* As the evidence supported a finding that appellant knowingly and voluntarily gave his consent to blood testing, there was no need to inform him of his right to revoke any "implied" consent.

Appellant finally charges that the test results were inadmissible because a blood sample was not retained by the Broken Arrow Police Department for sixty (60) days after it was withdrawn. *See* 47 O.S.Supp.1987, § 752(4). The record reveals that two (2) vials of blood were withdrawn from appellant. Both vials were sent to the Oklahoma State Bureau of Investigation (OSBI) lab in Tahlequah, where blood from one vial was tested for alcohol content. The vials were then sent to the OSBI lab in Oklahoma City, where a drug analysis was performed on August 23, 1988. The criminalist who performed the tests stated that he used blood from only one vial and kept the second vial for sixty (60) days before it was destroyed.

▮▮▮▮ The State concedes that one of the blood vials should have been retained by the Broken Arrow Police Department for sixty (60) days from the date it was collected. However, it argues that appellant was not prejudiced by the procedure employed in this case. We agree. The underlying purpose of Section 752(4) is to ensure that the person whose blood is drawn may obtain, upon his request and within certain time constraints, an independent analysis of his blood. In the present case, appellant's blood sample was maintained by the Oklahoma City OSBI lab for a period of sixty (60) days *after it was tested.* Therefore, the sample was maintained by State law enforcement agencies for a period of approximately 101 days and certainly could have been obtained by the Broken Arrow Police Department upon request. However, at no time did appellant request from

any agency that a sample of his blood be sent to a lab of his choosing for independent analysis. Accordingly, we find that appellant has failed to demonstrate prejudice as a result of the procedure employed to retain a sample of his blood.

The Judgment and Sentence is AFFIRMED.

LANE, P.J., LUMPKIN, V.P.J., and BRETT and JOHNSON, JJ., concur.

